IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-00357-RBJ

JOHN A. GILLES, on behalf of himself and all others similarly situated,

　　Plaintiff,

v.

FORD MOTOR COMPANY, a Delaware corporation,

　　Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

John Gilles is so unhappy with the gas mileage he has achieved in his 2013 Ford Escape SE that he wishes to represent everyone in the United States who purchased the vehicle in a class action lawsuit. Ford Motor Company moves to dismiss on grounds that Mr. Gilles' lawsuit is preempted by federal law. I disagree and therefore deny the motion.

### JURISDICTION

The Amended Complaint [ECF No. 13] invokes federal jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. Mr. Gilles alleges that he is a Colorado resident, and that Ford is a Michigan corporation. However, he does not allege that the amount in controversy exceeds $75,000. The Court *sua sponte* issued an order to show cause why the case should not be dismissed for lack of subject matter jurisdiction [ECF No. 33], noting that plaintiff's only reference to the amount in controversy, a statement on the coversheet of his original complaint that he demanded "[g]reater than $75,000," was insufficient. *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1182-83 (10th Cir. 2000).

In response to the order to show cause, plaintiff indicated that his intent was to invoke 28 U.S.C. § 1132(d)(2) which provides that the federal district courts have original jurisdiction of any civil action where the matter in controversy exceeds $5,000,000 and is a class action in which any member of the plaintiff class is a citizen of a state different from that of the defendant. [ECF No. 34]. He provided a complicated analysis of how, if a class of all 2013 Ford Escape SE buyers is certified, and they all (1) achieved 26 miles per gallon on the highway, as Mr. Gilles claims he achieved, versus the allegedly misrepresented 30 miles per gallon, (2) drove half of the average adult driver's 15,000 miles per year on the highway, (3) kept their vehicles for the average life of 10 years, and (4) paid an average of $4.00 per gallon, then the amount in controversy would exceed $5,000,000. Plaintiff offered to file another Amended Complaint incorporating this analysis if the Court wished. Ford has not commented on the jurisdictional issue. As I indicated in my last order asking for supplemental briefing on the topic of preemption, [ECF No. 39], I believe Mr. Gilles has alleged sufficient facts at this stage, prior to class certification, to demonstrate the requisite amount in controversy under 28 U.S.C. § 1132(d)(2).

## FACTS

Mr. Gilles was in the market for a new car in 2012. He alleges that as he surveyed his options, paying careful attention to fuel economy, one vehicle in particular caught his eye. According to Mr. Gilles, Ford's website reported that the all-wheel drive 2013 Ford Escape SE achieves 22 miles per gallon in the city and 30 miles per gallon on the highway, but it did not indicate that these figures were EPA estimates. [ECF No. 13 ¶ 18.] Ford's 2013 Product Sheet made the same statements, he claims, again not revealing that the miles per gallon figures were EPA estimates (and adding that the vehicle gets up to five miles per gallon better than previous

models). *Id.* at ¶ 25, 30. Similarly, the dealer's website touted the vehicle for achieving 30 miles per gallon without indicating that this advertised mileage was an EPA estimate. *Id.* at ¶ 26. Mr. Gilles further alleges that he viewed a series of short Ford web videos entitled "Escape My Life!" that advertised the Escape's miles per gallon without indicating that the numbers were based on EPA estimates. *Id.* at ¶ 27. Relying at least in part on these mileage figures and other boasts about the vehicle's fuel efficiency, he bought the Escape.

But, he alleges, Ford promised more than it delivered. Based the 7,000 miles he had driven by the time of his Amended Complaint, his 2013 Ford Escape SE had averaged 25 to 26 miles per gallon on the highway at 60 to 65 miles per hour in ideal conditions with no headwind. *Id.* at ¶ 30. Contrary to statements made in the 2013 Product Sheet, he achieved approximately four fewer miles per gallon than he achieved in his 2012 Escape. *Id.* at ¶ 36. Based on these alleged discrepancies, he brings claims asserting (1) violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 to 1001; (2) negligent misrepresentation; and (3) fraudulent misrepresentation. He prays for actual and treble damages, attorney's fees, costs, and injunctive relief.

Ford responds with a motion to dismiss under Fed. R. Civ. P. 12(b)(6) that makes five arguments: (1) Mr. Gilles's claims are preempted by federal law, (2) he fails to plead sufficient facts to meet the plausibility threshold under *Twombly* and *Iqbal* or to meet the heightened pleading requirements under Fed. R. Civ. P. 9(b); (3) he lacks standing to sue under the Energy Policy Conservation Act; (4) the Court should abstain from deciding this case under the primary jurisdiction doctrine; and (5) that the Colorado Consumer Protection Act under which Mr. Gilles brings suit contains a savings clause that exempts Ford based on the company's purported compliance with federal law regarding fuel economy advertising. [ECF No. 16.]

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

### Preemption Under the EPA Requirements

A short discussion of preemption will be helpful here. The Supremacy Clause of the U.S. Constitution gives Congress the power to preempt state law. *See Choate v. Champion Home Builders, Co.*, 222 F.3d 788, 791-92 (10th Cir. 2000). "[A]n agency's preemption regulations, promulgated pursuant to Congressional authority, have the same preemptive effect as statutes." *Id.* (quoting *Meyer v. Conlon*, 162 F.3d 1264, 1268 (10th Cir. 1998)). Federal preemption occurs in three situations. The first situation—referred to as express preemption—is where Congress defines explicitly the extent to which its enactment preempts state laws. The second situation—often called field preemption—occurs when state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). The third situation—conflict preemption—occurs when "it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 79. The second and third situations are flavors of *implied* preemption.

Initially the parties only addressed express and conflict preemption. However, based on this Court's understanding of Mr. Gilles's Amended Complaint, Mr. Gilles is not making any claims that fall under the express preemption provisions of the federal laws involved, nor would any relief under the CCPA "stand as an obstacle" to the purposes and objectives of federal law. In other words, the only way Mr. Gilles's claims could be preempted here would be if Congress intended to occupy the entire field of advertising related to vehicle fuel economy such that even arguably compatible state laws were preempted. Therefore, the Court ordered supplemental briefing on the narrow question of whether Mr. Gilles's claims were barred by field preemption in this area. After carefully reading the well-written briefs of both parties, the Court finds that Mr. Gilles's claims are not preempted by federal law.

Ford grounds its preemption arguments in two bodies of federal law, the first being the Energy Policy and Conservation Act of 1975, 49 U.S.C. § 32901-32919. Pursuant to that statute, the Environmental Protection Agency developed procedures for determining the estimated fuel efficiency of new vehicles. Each model is tested using the same testing protocols. Thereafter, fuel economy label must be posted on the vehicle. 49 U.S.C. § 32908(b)(1). EPA regulations issued pursuant to the statute require that these familiar labels, sometimes known as "Monroney Stickers," must include ratings expressed as estimated miles per gallon for both city and highway driving. 40 C.F.R. § 600.302-08(b)(1); 600.302-11; 600.302-12(c)(1)(iv). The label must also advise that "Your actual mileages will vary depending on how you drive and maintain your vehicle" or "actual results will vary for many reasons, including driving conditions and how you drive and maintain your vehicle." *Compare* 40 C.F.R. § 600.302-08(b)(4) *with* 40 C.F.R. § 600.302-12(b)(4). The EPA is also required to prepare a fuel economy booklet that automobile

dealers must make available to prospective buyers.  49 U.S.C. § 32908(c); 40 C.F.R. §§ 600.405-08 and 407-08.

In the present case Mr. Gilles is not alleging that his 2013 Ford Escape SE was not properly posted with a compliant fuel economy label.  Specifically, he is not alleging that the Monroney Sticker on his Escape did not indicate that 30 miles per gallon on the highway is an estimate based upon EPA methods, or that it failed to note that his actual results would vary according to driving and maintenance factors.  Nor is he alleging that the dealer did not make the required fuel economy booklet available to him.  And, although Ford's motion suggests otherwise, Mr. Gilles is not alleging that Ford provided false or misleading fuel economy data to the EPA.  In short, he alleges no violation by Ford of the Energy Policy and Conservation Act of 1975.

Rather, apparently aware of the problems such claims would create for him, Mr. Gilles takes a different road.  The substance of his case is that while Ford might have complied fully with those obligations, Ford simultaneously was representing in print and video advertisements that the vehicle achieves 30 miles per gallon on the highway without mentioning that this number is an EPA estimate or that actual mileage will vary.  His complaint is that the numbers were not identified as such, and that he was not cautioned in those advertisements that actual mileage will vary; and therefore he purchased the Escape in reliance on the representation that the vehicle would achieve 30 miles per gallon.  Based on his personal experience since then, he now claims that the representations were false.

The Energy Policy and Conservation Act of 1975 and the regulations issued pursuant to it do not purport to regulate advertising of fuel economy beyond the requirements of the Monroney Sticker and the dealer booklet.  Thus, I agree with federal and state jurisdictions that have held

that state law claims akin to those asserted here are not preempted by this body of federal law. *See, e.g.*, *True v. American Honda Motor Co., Inc.*, 520 F.Supp. 2d 1175, 1180-81 (C.D. Cal. 2007); *Paduano v. American Motors Co., Inc.*, 169 Cal. App. 4th 1453, 1473-85 (Cal. Ct. App. 2009).

### **Preemption Under the FTC Regulations**

Although the EPA did not undertake regulation of automobile manufacturers' advertising beyond the Monroney Sticker and the booklet, the Federal Trade Commission (FTC) did. Specifically, in Part 259 entitled "Guide Concerning Fuel Economy Advertising for New Automobiles," issued pursuant to 15 U.S.C. § 41-58, the FTC regulation states in relevant part:

> **Advertising disclosures.**
>
> (a) No manufacturer or dealer shall make any express or implied representation in advertising concerning the fuel economy of any new automobile unless such representation is accompanied by the following clear and conspicuous disclosures:
>
> (1) If the advertisement makes:
>
> (i) Both a city and a highway fuel economy representation, both the "estimated city mpg" and the "estimated highway mpg" of such new automobile must be must be disclosed;
>
> . . . ; and
>
> (2) That the U.S. Environmental Protection Agency is the source of the "estimated city mpg" and "estimated highway mpg" and that the numbers are estimates.

16 C.F.R. § 259.2.

Simply put, when a manufacturer includes miles per gallon numbers in an advertisement, it must, in a clear and conspicuous manner, include the EPA mileage estimates, state that they are estimates, and indicate that the EPA is the source of the estimates. The regulation does not require the addition of an "actual results will vary" disclaimer.[1]

---

[1] The regulations permit the manufacturer to include in addition estimates derived from non-EPA tests provided that the EPA tests estimates are given equal or greater prominence, depending on the type of

Ford suggests that the FTC's regulation preempts regulation of new car fuel economy advertising not already preempted by the Energy Policy and Conservation Act of 1975. But again, this seems to miss the thrust of Mr. Gilles's Amended Complaint.

Mr. Gilles's Amended Complaint, as this Court understands it, claims that Mr. Gilles saw advertisements for Ford's 2013 Escape SE that included EPA estimated fuel economy numbers but (1) failed to disclose that the advertised fuel economy standard was based on EPA data and (2) failed to include a disclaimer that actual results may vary.

If true, the first claim would describe behavior that is inconsistent with FTC regulations. *See* 16 C.F.R. § 259.2 (requiring that whenever an advertisement makes an express or implied representation regarding the estimated fuel economy of a vehicle, the advertisement must disclose that the EPA was the source of that estimate, or if the estimate came from another source, displaying the EPA estimates alongside the non-EPA estimates). Because plaintiff's claim does not rely on state law that conflicts with federal regulations, at least insofar as identifying that the numbers are EPA estimates is concerned, it appears that the regulations neither expressly nor impliedly preempt the claim. Rather, Mr. Gilles's claims under state law, again at least with respect to identifying that the numbers are EPA estimates, would appear to be consistent with the FTC regulations.

On the topic of field preemption, Ford notes that "no federal court has addressed the Court's specific question—whether Congress intended to occupy the entire field of advertisements about fuel economy." [ECF No. 41 at 4.] Ford nonetheless offers law suggesting perhaps Congress meant to preempt the field of fuel economy advertising and that relatedly, "Congress contemplated and desired FTC's involvement in this comprehensive regulatory

---

advertisement, and the source, driving conditions and other variables affecting the non-EPA test are identified. 16 C.F.R. § 259 (c).

scheme." *Id.* at 3.  But the idea that Congress meant to occupy the entire field of fuel economy standards is easier to swallow than the idea that it meant to occupy the field of advertising relating to fuel economy.

First, a congressional intent to preempt a field "may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it' . . . ." *English*, 496 U.S. at 79 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  Because Congress explicitly grounded the FTC's ability to regulate fuel economy advertisements on the Monroney Sticker and information booklet, and because they do not evince a comprehensive scheme to regulate all advertising that touches on fuel economy, this Court cannot conclude that Congress meant the FTC to preempt this entire field.  Moreover, regulation of advertising is an area that has "been traditionally occupied by the States," a situation that requires that Congress's intent to supersede state laws be "clear and manifest."  *Id.* (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)) (internal quotation marks omitted).  This Court does not see any such clear and manifest purpose here.

Ford suggests that this Court's order for supplemental briefing implicitly concluded that Mr. Gilles's second claim—failure to include a disclaimer that actual results may vary—is preempted by the FTC regulations because those regulations no not require such a disclaimer. [ECF No. 41 at 1 n.1.]  I agree that insofar as Mr. Gilles's second claim would impose a different labeling requirement than the one required by the FTC regulations, it is preempted by the regulations.  *See* 16 C.F.R. § 259.2(a)(2), n.5 (stating that the manufacturer must, at minimum, disclose the fuel economy figures as "EPA estimate(s)," but making no mention of an "actual results may vary" disclaimer).

To summarize, Mr. Gilles has alleged that some of Ford's advertisements concerning the all-wheel drive 2013 Ford Escape SE contain the EPA's estimates but do not indicate that they are in fact EPA estimates. If that is true—and for purposes of this motion I must assume it is true—then the advertisements would not comply with the FTC's requirements. Mr. Gilles' claims under Colorado law appear to complement rather than conflict with the EPCA and FTC regulations. Therefore, I do not find them preempted.

### **Plausibility Under *Twombly* and *Iqbal* and Heightened Standard Under Rule 9(b)**

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to be assumed true. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

The Federal Rules of Civil Procedure require claims of fraud to be pleaded with specificity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). And in the Tenth Circuit, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991).

Here, Mr. Gilles has alleged sufficient facts—if they are true—that would allow the Court to draw the inference that Ford violated the CCPA and may have engaged in fraud. In a nutshell, Mr. Gilles suggests that Ford, by advertising the fuel economy of the Escape without disclosing such estimates as EPA estimates, was suggesting that the vehicle "actually achieves a specific fuel economy." [ECF No. 20 at 2.]

He says he viewed Ford advertisements that did not disclose the source of their fuel economy estimates. [ECF No. 13 ¶¶ 18, 25, 27.] This includes videos on YouTube and Ford's 2013 Product Sheet. *Id.* He also claims that Ford's salespeople made similar statements about the Escape's fuel economy without disclosing the fact that they were basing their statements on EPA estimates. *Id.* ¶¶ 15, 16, 32. Finally, he claims that his Escape achieves lower gas mileage than Ford promised. *Id.* ¶¶ 7-8, 34. These alleged facts, are sufficient to meet the plausibility threshold and to let the case proceed. Whether they will establish a violation of the CCPA or demonstrate fraud sufficient to survive a motion for summary judgment, I make no prediction.

Ford suggests that Mr. Gilles has not pled his case with the required specificity. In particular, it points to the fact that he does not specifically allege that he saw the corporate disclosures about sustainability, (ECF No. 13 ¶ 12), and that some statements upon which he claims to have relied were made after he purchased the Escape, (*id.* ¶ 13). Ford notes that the Amended Complaint states that Mr. Gilles visited Ford's website "[p]rior to purchasing his Escape," (*id.* ¶ 17), but does not say exactly when, how many times, which portions he viewed, or whether his viewing was connected to the purchase. [ECF. No. 16 at 12-13.] In any case, the website, at least in certain pages, *does* disclose that the mileage estimates were "EPA-estimated fuel economy." [*Id.* at 13, Ex. A.] Ford also contends that Mr. Gilles has failed to adequately plead an agency relationship between Ford and the dealership. These arguments go beyond the

pleadings to questions—such as the reasonableness of Mr. Gilles's reliance or the existence and scope of an agency relationship—that can be more fruitfully addressed after discovery.[2]

Mr. Gilles has also met the heightened pleading standards established by Rule 9(b). He has identified the contents of the alleged fraudulent statements by pointing to specific statements that Ford made that he relied upon. If Mr. Gilles were able to give more specific dates or tell us exactly where he was when he saw these materials, it does not seem any more likely to put Ford on notice of the claims against it. Indeed, Ford and Mr. Gilles both attached certain advertisements to their court filings, and there does not appear to be a real dispute about the identity of the advertisements Mr. Gilles claims he saw.

### Standing Under the Energy Policy Conservation Act ("EPCA")

Mr. Gilles, as noted above in my discussion of the preemption issue, is not suing under the EPCA. Ford's argument here is misplaced and need not be addressed.

### Abstention Under the Primary Jurisdiction Doctrine

Ford urges this Court to abstain under the doctrine of primary jurisdiction. [ECF No. 16 at 24.] Under that doctrine, courts will suspend judicial action on a case while simultaneously referring the matter to an agency with "special competence" relevant to the claim. *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). In the Tenth Circuit, the doctrine may be invoked where "issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *TON Servs., Inc. v. Qwest Corp.*,

---

[2] I note that the cases cited by Ford in support of its arguments about agency are not particularly persuasive. The first case, *Azimi v. Ford Motor Co.*, 977 F. Supp. 847 (N.D. Ill. 1996), is an application of Illinois agency law and ultimately concluded that a generalized factual predicate (like the display of the manufacturer's logo) is sufficient to plead an agency relationship. The remaining cases cited by Ford deal with dispositive motions filed after the entry of evidence. They are not relevant to the pleading stage. *See Mercedes-Benz of North America, Inc. v. Garten*, 618 A.2d 233 (Md. 1993); *Hancock v. Minneapolis-Moline, Inc.*, 482 P.2d 426 (Colo. App. 1971).

493 F.3d 1225, 1238 (10th Cir. 2007) (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005)).

The problem with Ford's argument is that this case does not involve claims based on matters within an agency's special competence. In support of this argument, Ford points out that the "EPA has primary jurisdiction regarding the accuracy of EPA mileage estimates." [ECF No. 16 at 25.] This is undoubtedly true, and those estimates surely depend on technical information not within the conventional experience of this Court. However, as noted above, this case is not about the accuracy of the EPA estimates. Rather Mr. Gilles is challenging specific advertisements which failed to disclose that they were based on the EPA estimates and, in his opinion, misled him and other purchasers of the Ford Escape. These claims are closer to the garden variety fraud cases that are very much within the conventional experience of the courts. This Court therefore declines Ford's invitation to refer the case to the EPA.

### **Colorado Consumer Protection Act Exemption for Compliance with Federal Law**

Finally, Ford protests that the CCPA expressly states that it does "not apply to [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local government agency. C.R.S. § 6-1-106(1)(a). While that is a correct statement of law, it is inapplicable to the claims and alleged facts in Mr. Gilles's Amended Complaint (much in the same way Ford's arguments about standing, preemption, and abstention are inapplicable). Ford argues that "the act of merely attaching what is legally required to be attached, or making a statement in an advertisement that is authorized under FTC guidance, cannot provide a basis for a claim under the CCPA." [ECF No. 16 at 27.] The gravamen of Mr. Gilles's complaint is the opposite: that while Ford complied with federal law and regulations, it went further than that in its advertisements and made claims about the Escape's fuel economy without disclosing that

such claims were based on the EPA estimates.  Therefore, federal law does not speak to the specific facts underlying Mr. Gilles's Amended Complaint, and the CCPA savings clause is inapplicable.

## ORDER

Defendant Ford's Motion to Dismiss [ECF No. 16] is DENIED.

DATED this 12th day of February, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge